15848

SOUTH CAROLINA STATE BOARD OF DENTAL EXAMINERS v. BREELAND

(38 S. E. (2d), 644)

*Messrs. John M. Daniel,* Attorney General, and *T. C. Brown,* of Columbia, and *Zeigler & Brailsford,* of Orangeburg, for appellant,

*Messrs. Edgar A. Brown* and *J. Julien Bush,* of Barnwell, *A. J. Hydrick,* of Orangeburg, and *J. D. Parler,* of St. George, for respondent,

June 12, 1946.

Mr. Associate Justice Oxner delivered the unanimous Opinion of the Court.

This is a special proceeding instituted by the South Carolina State Board of Dental Examiners, as authorized by Section 5210 of the 1942 Code, to revoke the license to practice dentistry issued to Dr. B. H. Breeland. The appellant, which will hereafter be referred to as the Dental Board, filed a petition in the Circuit Court alleging that Dr. Breeland had been guilty of immoral or dishonorable conduct as shown by his conviction on a charge of rape. Upon return being made to the petition, a hearing was held in the Circuit Court, and the petition was dismissed. This appeal followed.

The respondent was licensed by the Dental Board in 1937. He practiced his profession at Holly Hill, in Orangeburg County, until 1943. On September 18, 1943, he was convicted of the crime of rape in that county, sentenced to confinement in the state penitentiary for a period of eighteen years, and was later granted a pardon.

The respondent in his return admitted that he had been convicted of rape as alleged in the petition, but denied that he was guilty as charged.

Upon the hearing before the Circuit Judge, the appellant offered in evidence the indictment for rape returned by the grand jury, the verdict endorsed thereon of guilty with recommendation to mercy by the trial jury, and the sentence imposed by the Court. A resolution of the Dental Board was also offered in evidence, wherein it was stated that on the record of the conviction of Dr. Breeland the Dental

Board believed that he "has been guilty of immoral and dishonorable conduct which would prevent it from issuing to him a certificate to practice". Also, that the Board did not consider him a person of good moral character, or one who could be trusted to conduct an honorable or honest dental practice. Oral evidence was likewise introduced from various officers of the Dental Board to the effect that a license to practice dentistry would not have been issued to Dr. Breeland in the first instance, had he been previously convicted of rape as shown by the court record. A transcript of the testimony offered by the State at the trial of the respondent in the Court of General Sessions was excluded by the Judge upon the ground that it was inadmissible.

The respondent invoked the general rule to the effect that a judgment in a criminal prosecution cannot be received in a subsequent civil action to establish the truth of the facts on which it was based, and contended that he was entitled to a trial *de novo*. The Circuit Judge adopted this view, holding that the record of conviction in the criminal action afforded no proof of the guilt of the respondent, either *prima facie* or conclusive; and further held that since the Dental Board had offered no proof that respondent was guilty of rape, except the record of his conviction in the criminal court, the petition would necessarily have to be dismissed for lack of proof of guilt.

The statute—Section 5210—provides:

"Any circuit court judge of this state shall have the power and authority, by proper order, after a hearing duly had on a petition of any person or by the state board of dental examiners to revoke or suspend, for any period of time practice under any license issued in this state to any dentist or dental hygienist, for any one of the following causes shown at a hearing before it, to wit: * * * where one has been guilty of any immoral or dishonorable conduct which would prevent the board, in its sense of honor, from issuing the certificates of practice provided for in Section 5207 (5199) * * *"

It is provided in Section 5199 that each applicant for a license must be at least twenty-one years of age, of good moral character and reputation, and shall submit such proof as the board may require as to character and firmness. This section of the Code further provides:

"If the board shall become convinced that an applicant is of such moral character that they believe the applicant cannot be trusted to conduct an honorable or an honest practice in the state, they shall have the right to decline to allow the applicant to take the prescribed examination, or may have the right to decline to issue a license regardless of other qualifications applicant may possess."

Respondent takes the position that neither the Dental Board nor the Court is authorized under Section 5210 to revoke a license to practice dentistry on the sole ground that the holder of the license has been convicted of a crime involving moral turpitude. The point is emphasized that the statute does not. use the word "convicted", but reads "has been guilty of any immoral or dishonorable conduct".

Appellant concedes the existence of the general rule that a judgment of conviction in a criminal prosecution is not an adjudication binding the defendant in a subsequent civil action based on the same facts, but challenges the application of the rule to this case as being incongruous and unsound in principle. It is contended that the record of conviction should have been received as conclusive evidence of guilt.

The general rule just adverted to finds support in several of our cases upon which the Circuit Judge relied and by which he felt bound: *Frierson v. Jenkins,* 72 S. C., 341, 51 S. E., 862, 110 Am. St. Rep., 608, 5 Ann. Cas., 77; *Fonville v. Atlantic & C. Air Line R. Co.,* 93 S. C., 287, 75 S. E., 172; *Keels v. Atlantic Coast Line R. Co.,* 159 S. C., 520, 157 S. E., 834; *Globe & Rutgers Fire Ins. Co. v. Foil,* 189 S. C., 91, 200 S. E., 97.

The question has been the subject of a number of annotations: 11 L. R. A. (N. S.), 653; 21 Ann. Cas., 1184; 31 A. L. R., 261; 57 A. L. R., 504; 80 A. L. R., 1145; 130 A. L. R., 690. The source of this rule dates back towards the

beginning of the Common law. The reasons generally assigned for it are difference in parties, lack of mutuality, and dissimilarity in the procedure and the degree and elements of proof. The reasons for the application of the rule are stated in *Fonville v. Railway Co., supra,* as follows: "The want of mutuality, arising out of the fact that the parties to the record are not the same, and the fact that the course of the proceedings and the rules of decision in the two Courts are different. A higher degree of proof is required in criminal than in civil cases."

Many courts, recognizing that the lapse of time has tended to dissolve many substantial distinctions between civil and criminal trials, have reached the conclusion that the most logical reason for the rule is that there is a difference in the parties and in the *quantum* of proof required. Certainly when a judgment of conviction is offered in a civil proceeding as evidence against the party convicted, he is in no position to complain of a difference in the degree of proof which is so much in his favor.

While some courts have rigidly adhered to the general rule to the effect that a judgment of conviction cannot be given in evidence in a purely civil action to establish the truth of the facts on which it was rendered, many others have relaxed or modified the rule in certain cases to the extent of permitting the introduction of the criminal conviction as *prima facie* evidence of the facts involved, and in at least one jurisdiction, the judgment of conviction has been held to be conclusive.

In *Schindler v. Royal Insurance Co.,* 258 N. Y., 310, 179 N. E., 711, 80 A. L. R., 1142, the Court held that a conviction of the plaintiff of the crime of presenting to the defendant insurance company a false and fraudulent proof of loss was *prima facie* evidence of such fact in an action on the insurance policy, defended on the ground that it was void by reason of the false and fraudulent statement of loss. The Court there strongly intimated that probably the sounder view was that such a judgment should be conclusive but felt that it was bound by established precedents, and

finally reached the following conclusion: "It would be an un-edifying spectacle if the courts should now apply the strict rule which excluded all reference to the judgment of conviction in the civil action as evidence tending to establish the material facts. We shall, however, continue to hold that it is not effective as a plea in bar".

One member of the Court, however, dissented and stated that he thought the judgment should be conclusive for the reasons stated in *Eagle, Star & British Dominions Ins. Co. v. Heller*, 149 Va., 82, 140 S. E., 314, 57 A. L. R., 490.

In the Virginia case mentioned plaintiff brought an action to recover on a fire insurance policy issued to him upon a stock of goods. On the trial of the case the insurer offered in evidence a judgment showing that the plaintiff had been previously convicted of the offense of wilfully burning the same stock of goods with intent to defraud the insurer. The Court held that the judgment of conviction was conclusive of the fact that the plaintiff fraudulently destroyed his own property for the purpose of securing the insurance and that such judgment could not be collaterally attacked.

In *Poston v. Home Insurance Co.*, 191 S. C., 314, 4 S. E. (2d), 261, 123 A. L. R., 1451, this Court, in passing upon the right to a continuance of an action brought by the insured upon a policy insuring him against loss by theft of his automobile—which continuance was sought by the insurance company so that the criminal charges against the insured for the theft of his automobile could be tried first—stated: "The conviction of respondent (plaintiff) upon the charges would be conclusive against him here because this court would not look with favor upon the right of any party to profit by his own criminal act".

All of the foregoing cases, as well as those cited in the annotations heretofore mentioned, involved purely civil actions between private litigants where the rights of the general public were not involved. Even in those cases the courts, including this Court, recognized exceptions to the general rule. In none of there were the actions *quasi* public in form and character. The instant action is a special proceeding

brought by an agency of the State for the benefit of the general public. The State has a right under its police power to define the qualifications one shall possess in order to engage in the practice of dentistry and, in doing so, may properly require that such a person should not only possess the necessary technical skill, but also the qualifications of honor and good moral character. Proceedings such as these are not in their nature an effort to further punish one who may already have been punished for the same offense, but are a rightful exercise of the power of the State to protect its citizens from practitioners who do not possess the necessary qualifications. For all practical purposes the parties in the present proceeding are the same as those in the criminal proceeding. Respondent has had his day in court and has been convicted with all the safeguards thrown around a person accused of crime. The question of his guilt here is precisely the same as was determined adversely to him under circumstances most favorable to himself—that is, in a prosecution in which he could not have been convicted unless his guilt had been shown beyond a reasonable doubt. The reasons generally assigned for not giving a judgment of conviction conclusive effect have no application to the instant case and no good reason appears why respondent should now be permitted to collaterally attack the judgment of conviction. In Freeman on Judgments, Section 648 (5th Ed.), the author states: "There is no reason why a final judgment in a criminal case or proceeding should not, under proper circumstances, be given conclusive effect as an estoppel or bar. The same policy which dictates the rule in civil cases requires it in criminal cases. The principles applicable in judgments in criminal cases are, in general, identical so far as the question of estoppel is involved, with the principles recognized in civil cases".

It was held in *Underwood v. Commonwealth* (Ky.), 105 S. W., 151, that in a proceeding to disbar an attorney, a judgment of conviction previously rendered against him was conclusive evidence of his guilt of the offense charged. The case of *In re Needham*, 364 Ill., 65, 4 N. E. (2d), 19, is to

the same effect. Of interest is the case of *Ex Parte Wall,* 107 U. S., 265, 2 S. Ct., 569. It was there sought to disbar an attorney for having committed an indictable offense. He asserted that he was not guilty and contended that his guilt or innocence could only be determined by a trial in the criminal court. A majority of the Court, while conceding the general rule that a previous conviction should be had before striking an attorney off the roll for an indictable offense, held that the rule was not an inflexible one and that under the special circumstances of that case, the Court had authority to summarily determine the matter. Justice Field, in a dissenting opinion, stated: "A conviction of a felony or a misdemeanor involving moral turpitude implies the absence of qualities which fit one for an office of trust, where the rights and property of others are concerned. *The record of conviction is conclusive evidence on this point".* (Italics ours.)

It is suggested, however, that the Dental Board possesses no inherent power to revoke the license of a dentist and that the question under consideration must be determined solely from an examination of the statute authorizing this proceeding, which respondent says contemplates a trial *de novo* before the Circuit Judge on the question of his guilt. The statute empowers the Circuit Judge to revoke or suspend the license of a dentist who "has been guilty of any immoral or dishonorable conduct which would prevent the Board, in its sense of honor, from issuing the certificates of practice provided for" in Section 5199. But when one has been duly convicted in the Court of General Sessions of a felony, we do not think the statute contemplates that his guilt or innocence shall again be determined by the Circuit Judge. The Dental Board has stated that it would not have issued a license in the first instance to respondent had he been previously convicted of rape. In other words, the Dental Board has concluded that respondent's conduct, as evidenced by his conviction of the offense of rape, has been such as would prevent it, *in its sense of honor,* from issuing a license to him if he were now making an original application. Suppose this respondent was now applying for a

license to practice dentistry and possessed all the necessary professional skill, but some years previously had been convicted of rape, would it be necessary for the Dental Board, a body wholly unlearned in the law and legal procedure, to disregard the solemn adjudication of guilt made in the Court of General Sessions, the regular tribunal established under the Constitution of this State for the trial of such cases, try the case again, and determine anew respondent's guilt before it would be warranted in declining to issue a license on the ground that the applicant did not possess the necessary moral character? We think not. Yet the statute empowers the circuit judge to revoke or suspend a license on the ground that the conduct of the dentist has been such as would prevent the Board, *in its sense of honor,* from issuing a license in the first instance. It is true that the statute does not use the word "convicted", but it has always been supposed that one who has been "convicted" of rape is one who, beyond all reasonable doubt, "has been guilty of" rape. In *Smith v. Todd,* 155 S. C., 323, 152 S. E., 506, the Court quoted with approval the following definitions of that term: "Conviction, in its legal sense, means a final judgment conclusively establishing guilt", and "Conviction in its legal sense, is the determination of guilt in a criminal prosecution". Has there not in this case been a final judgment conclusively establishing the guilt of respondent and has not his guilt been determined in a criminal prosecution?

In *Hawker v. People of N. Y.,* 170 U. S., 189, 18 S. Ct., 573, the Court had under consideration a statute making it a misdemeanor for one to practice medicine after being convicted of a felony. While the question involved in that case is not apposite here, we think the following language of the Court is pertinent: "When the legislature declares that whoever has violated the criminal laws of the state shall be deemed lacking in good moral character, it is not laying down an arbitrary or fanciful rule, one having no relation to the subject-matter, but is only appealing to a well-recognized fact of human experience; and, if it may make a violation of criminal law a test of bad character,

*what more conclusive evidence of the fact of such violation can there be than a conviction duly had in one of the courts of the State? The conviction is, as between the state and the defendant, an adjudication of the fact.* So, if the legislature enacts that one who has been convicted of crime shall no longer engage in the practice of medicine, *it is simply applying the doctrine of res judicata,* and involking the conclusive adjudication of the fact that the man has violated the criminal law". (Italics added.) So that in this case if the Legislature had used the word "convicted", it would merely have been a declaration of the conclusive effect which the law already gave to an adjudication of guilt made in the Court of General Sessions. It must be kept in mind that the vital matter is not the conviction of respondent, but whether he committed the crime of rape, an offense recognized by mankind as involving immoral and dishonorable conduct. The conviction is only evidence and we think conclusive evidence, that respondent did commit the offense.

The fact that the Legislature has at times used the word "guilty" in the sense of "convicted" is illustrated by the punishment prescribed for murder in Section 1102 of the 1942 Code, which provides: "Whoever is guilty of murder shall suffer the punishment of death * * *" Can there be any doubt that the words "guilty of" in this instance were used as meaning "convicted of"?

In *State ex rel. Blackwood, Governor, v. Pridmore, County Supervisor,* 163 S. C., 97, 161 S. E., 340, under a statute empowering the Governor to remove an officer "who is guilty of misconduct or persistent neglect of duty in office", the Court sustained an order of the Governor removing from office the Supervisor of Greenville County principally upon the ground that he had been convicted of manslaughter. The question at issue here was not discussed, but it was apparently assumed that the judgment of conviction was conclusive evidence of the fact that the Supervisor was guilty of manslaughter.

It is further suggested that in the statute relating to the revocation of a license to practice medicine, the word "con-

victed" is used in one instance, and it is argued that if the Legislature intended that a judgment of conviction should be conclusive, it would have used the word "convicted" in the statute under consideration. Under Section 5154 of the 1942 Code, the State Board of Medical Examiners is given the power to suspend or revoke the license of a physician "after due notice and fair opportunity for hearing, *upon its being made satisfactorily to appear that the holder thereof is guilty of felony or gross immorality,* or is addicted to the liquor or drug habit to such a degree as to render him or her unworthy or unfit to practice medicine in this state, or *has been convicted* in a court of competent jurisdiction of illegal practice". (Italics added.)

Under the foregoing statute relating to the revocation of a license to practice medicine, did the Legislature intend to make a conviction of "illegal practice" conclusive evidence of guilt, but not conclusive in the case of conviction of a "felony"? Suppose one physician was convicted of rape and another of illegal practice, would the physician convicted of rape be entitled to a trial *de novo* on the question of his guilt or innocence and that right denied to the one convicted of illegal practice? Would it not be more logical to assume that the Legislature intended that the judgment of conviction should be conclusive in each instance? There is no logical basis for a distinction. We have recently held that choice of language in an act "will not be construed with literality when that would defeat the manifest intention of the lawmakers" and that the court will reject the ordinary meaning of words used in a statute "when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature". *State v. Gilliam,* . . S. C., , 37 S. E. (2d), 299.

It may be that the Legislature, in framing the statute in question, chose the word "guilty", instead of "convicted", so as to include as a ground for removal or suspension "immoral or dishonorable conduct" of such nature that it would not constitute an indictable offense. But whether or not this was the legislative intent we need not now decide for mani-

festly it was intended to include such "immoral or dishonorable conduct" as rape, a felony at Common law.

We think respondent's suggested construction of the statute is illogical and unreasonable and, if adopted, would lead to a result which obviously was not intended by the Legislature.

Under the terms of Section 5210, the circuit judge is empowered to either revoke or suspend a license for any of the causes therein designated. This Section further provides: "No license, when once revoked, shall ever be renewed by the Board, and no license, when once suspended, shall be reinstated or renewed until the offender has given satisfactory assurance and guarantee of correct conduct for the future". It follows that there must be another hearing before the circuit judge, at which it will be conclusively presumed that respondent "has been guilty" of rape. Such constitutes a proper ground for the revocation or suspension of his license. At such hearing the circuit judge will determine whether respondent's license should be revoked or whether it should be suspended; and if he concludes there should only be a suspension, he shall further determine and fix the term of such suspension.

Judgment reversed and the case is remanded for further disposition in accordance with the views herein expressed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.