699 S.E.2d 143

The ESTATE OF Michael L. STOKES, by and through Jennifer Stokes SPELL, as the Duly Appointed Personal Representative, Appellant,

v.

PEE DEE FAMILY PHYSICIANS, L.L.P., Mark S. Steadman M.D., Reginald S. Bolick, M.D., and Pee Dee Surgical Group, P.A., Defendants,

of whom Reginald S. Bolick, M.D. and Pee Dee Surgical Group, P.A. are Respondents.

No. 26867.

Supreme Court of South Carolina.

Heard June 25, 2010.

Decided Aug. 16, 2010.

Rehearing Denied Oct. 6, 2010.

344

J. Edward Bell, III and Thomas W. Winslow, both of Bell Legal Group, of Georgetown, for Appellant.

Saunders M. Bridges, Jr., Aiken, Bridges, Nunn, Elliott & Tyler, PA, of Florence, for Respondents.

Justice KITTREDGE.

■ This direct appeal presents the following question: If "A" has been injured and has a known claim against Defendant, but fails to file suit within the statute of limitations, and A thereafter dies as a result of the injury, may A's estate file and maintain a wrongful death claim against Defendant? We answer the question, "No." We affirm the trial court's dismissal of Appellant's Complaint against Respondents.

## I.

■ In October 2001, Michael L. Stokes consulted his family physician, Mark Steadman, M.D., about a mass on his thigh. Dr. Steadman diagnosed the mass as a superficial venous thrombosis (SVT), also known as a blood clot. In January

2002, Stokes's symptoms returned, and he again consulted Dr. Steadman, who ordered a venous Doppler study. Edward C. Floyd, M.D., read the Doppler results and also concluded that Stokes was suffering from SVT.

In July 2002, Dr. Steadman referred Stokes to a surgeon, Reginald S. Bolick, M.D., to determine whether surgery would alleviate Stokes's symptoms. Dr. Bolick examined Stokes and reviewed his records; he agreed that SVT was the proper diagnosis. As a precaution, Dr. Bolick ordered a CT scan of Stokes's chest and abdomen to rule out the presence of a hidden malignancy. The radiologist who read the CT scan found no evidence of malignancy.

In August 2002, Dr. Steadman referred Stokes to another surgeon, Arthur Cooler, M.D., for a second opinion regarding treatment options. Dr. Cooler examined Stokes, performed a Doppler study, diagnosed SVT, and advised Stokes that he could remove the thrombosis. In March 2003, Dr. Cooler performed surgery and the tissue was tested. What multiple doctors had diagnosed as a thrombosis was instead a "malignant leiomyosarcoma." After the cancer was diagnosed on March 20, 2003, Dr. Cooler referred Stokes to oncologists and surgeons at MUSC for further treatment.

In August 2005, Stokes timely filed a medical malpractice action against Dr. Steadman and his medical practice, Pee Dee Family Physicians. Stokes's Complaint stated he "was diagnosed with sarcoma cancer" on March 20, 2003, and it alleged that Dr. Steadman's failure to properly diagnose Stokes's cancer was the proximate cause of his harm.

On December 12, 2006, Stokes died from complications related to the cancer. The probate court appointed Stokes's daughter, Jennifer Spell (Appellant), as personal representative for the estate. In November 2007, Appellant moved to amend the Complaint to add Dr. Bolick and Pee Dee Surgical Group, P.A. (Respondents) as defendants and to assert a claim under the Wrongful Death Act.

The Second Amended Complaint alleged:

6. At all times prior to March 20, 2003, the Defendants treated [Stokes's] condition as if it were a [SVT] or blood clot of the right thigh area.

7. Defendants failed to properly diagnose [Stokes's] condition which was ultimately diagnosed as metastatic sarcoma.

8. At the time [Stokes] was diagnosed with cancer, it had already spread and this type of cancer is generally incurable.

9. On or about March 20, 2003, [Stokes] was diagnosed with sarcoma cancer. . . .

10. Michael L. Stokes died on December 12, 2006.

 Holding the three-year statute of limitations commenced on March 20, 2003, the trial court dismissed as untimely the wrongful death claim against Respondents. *See* S.C.Code Ann. § 15-3-545(A) (2005 & Supp.2009). Appellant concedes the medical malpractice three-year statute of limitations commenced on March 20, 2003, and acknowledges this limitation applies to Stokes.[1] Appellant contends, however, that a decedent's estate may revive a previously barred claim by invoking the three-year statute of limitations applicable to a wrongful death action. Appellant bases this argument on the following statutory language: "[In] an action under Sections 15-51-10 to 15-51-60 for death by wrongful act, the period [ ] begin[s] to run upon the death of the person on account of whose death the action is brought." S.C.Code Ann. § 15-3-530(6) (2005 & Supp.2009).

## II.

The Wrongful Death Act provides:

Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default *is such as would, if death had not ensued,*

---

1. The commencement of the statute of limitations, on March 20, 2003, is unchallenged as concerns Stokes's claims and is the law of the case. The statute of limitations begins to run on the date the injury resulting from the alleged wrongful conduct "either is discovered or may be discovered by the exercise of reasonable diligence." *Garner v. Houck*, 312 S.C. 481, 485, 435 S.E.2d 847, 849 (1993). It was unchallenged that the statute of limitations for all claims related to the misdiagnosis of Stokes's cancer began to run on March 20, 2003. It was also undisputed that on March 20, 2003, Stokes knew that Dr. Bolick was among the physicians who had misdiagnosed the cancer. "The date when a plaintiff learns of a potential new defendant has absolutely no bearing on the timing of the statute of limitations." *Gillman v. City of Beaufort*, 368 S.C. 24, 27–28, 627 S.E.2d 746, 748 (Ct.App.2006).

*have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued,* shall be liable to an action for damages, notwithstanding the death of the person injured. . . .

S.C.Code Ann. § 15–51–10 (2005 & Supp.2009) (emphasis added).

 A wrongful death action may be brought by the estate for the benefit of the decedent's heirs. S.C.Code Ann. § 15–51–20 (2005 & Supp.2009). Our jurisprudence makes clear that if the decedent was barred from recovering damages for his injuries, the bar passes to the decedent's estate. Succinctly stated, if the decedent had no claim at his death, the estate has no claim. In one of our earlier cases, we construed the wrongful death statute as requiring that the decedent, prior to death, not be "debarred" from recovery:

It seems to us that . . . the capacity of the deceased to maintain an action, based upon the injury which caused his death, is made the test of the right of the administrator to maintain the action provided for by the statute. Hence if the deceased has debarred himself by his contributory negligence, or by any other cause, from maintaining his action, based upon the injury which caused his death, it follows, necessarily, that his administrator is likewise barred of his right of action, which would otherwise be secured to him by the statute. *In all cases . . . the controlling question, therefore, is whether the deceased, if he had not died, could have maintained the action.*

*Price v. Richmond & Danville R.R. Co.,* 33 S.C. 556, 560, 12 S.E. 413, 413–14 (1890) (emphasis added).

Although our precedent has not spoken directly to the statute of limitations issue, our law has remained steadfast to the principle of limiting the right of recovery under the wrongful death statute to those cases in which the party injured would have been entitled to recover if death had not ensued. *See Nix v. Mercury Motor Express, Inc.,* 270 S.C. 477, 482–83, 242 S.E.2d 683, 685 (1978) (citations omitted), *overruled on other grounds, Farmer v. Monsanto Corp.,* 353 S.C. 553, 579 S.E.2d 325 (2003) ("Under both the Virginia and South Carolina wrongful death statutes the test of the right of an administrator to maintain an action for wrongful death is

whether the deceased could have maintained an action for the injury had he survived. . . . If [the] plaintiff's decedent had no right, at time of death, to maintain an action for personal injuries, then the right to maintain the present action could not be transmitted to her personal representative."); *Maxey v. Sauls*, 242 S.C. 247, 250, 130 S.E.2d 570, 572 (1963) (quoting *Scott v. Greenville Pharm., Inc.*, 212 S.C. 485, 489, 48 S.E.2d 324, 326 (1948)) (observing that "if the deceased never had a cause of action, none accrues under the wrongful death statute"); *Scott*, 212 S.C. at 489, 48 S.E.2d at 326 ("Of course, if the deceased never had a cause of action, none accrues under the wrongful death statute. The condition that the action be one which could have been maintained by the deceased if death had not ensued has reference to the circumstances attending the injury, and the nature of the wrongful act or omission which is made the basis of the action."); *Rish v. Seaboard Air Line Ry.*, 106 S.C. 143, 145, 90 S.E. 704, 704–05 (1916) (holding the wrongful death statute "limited the right of recovery to those cases in which the party injured would have been entitled to recover if death had not ensued").

The United States District Court of South Carolina, sitting in diversity, has addressed the very issue before us. In *Quattlebaum v. Carey Canada, Inc.*, the honorable and learned judge, Joe F. Anderson, Jr., correctly applied South Carolina law and dismissed a wrongful death claim because the decedent possessed no claim at his death. 685 F.Supp. 939 (D.S.C.1988). Judge Anderson examined South Carolina's Wrongful Death Act, as well as the Act's historical derivation from Lord Campbell's Act. In granting summary judgment to the defendant, Judge Anderson reasoned:

The right to bring a wrongful death claim is thus conditioned upon the decedent's right to maintain a claim or action. Under the terms of the wrongful death statute, the representative has no statutory right to pursue a wrongful death claim if the decedent's cause of action was barred by the statute of limitations.

. . .

The South Carolina court would no doubt find that the wrongful death statute contains language establishing a condition precedent to the right to bring a wrongful death claim. Therefore, a new statutory right is created by § 15–51–10 in the personal representative of the decedent which

can only be maintained if the decedent, had he lived, could have maintained such an action. . . . Furthermore, anything that would have defeated the decedent's recovery had he survived the accident, 'such as contributory negligence, a valid release, or similar acts on his part,' would defeat the right of recovery in behalf of his family in case of his death. It follows logically that the decedent's failure to file a timely claim against Carey Canada is an act, or omission, on his part which should defeat the right of recovery of his personal representative.

*Id.* at 940–42 (citations omitted). *Quattlebaum* was correctly decided and adheres to the principle that a decedent's estate may maintain an action only when the decedent would have been entitled to maintain an action had he survived.

We reaffirm today that a claim under the Wrongful Death Act lies in the decedent's estate only when the decedent possessed the right of recovery at his death. Appellant's reliance on the separate wrongful death statute of limitations is misplaced, for the wrongful death statute of limitations does not serve to revive a previously barred claim.[2] Section 15–3–530(6) is triggered only where it is first established that the decedent had a right of recovery at the time of death. If the decedent had a right of recovery at the time of death, then the wrongful death action must be filed within three years, which begins to run "upon the death of the person on account of whose death the action is brought." S.C.Code Ann. § 15–3–530(6).

## III.

Because the decedent's claim against Respondents was barred at the time of his death, the trial court properly dismissed the claims against Respondents.

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.

---

2. Appellant also relies on the concept of the accrual of a cause of action. To be sure, a wrongful death claim accrues only upon the death of the decedent. Yet, the concept of accrual of action under the Wrongful Death Act has no bearing on the effect of the decedent's lack of claim at the time of death.